Cedarbrook Realty, Inc. et al., Appellants *v.* Charles F. Nahill, Jr. et al., Appellees.

Argued April 4, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*Jeffrey A. Less,* with him *Patrick J. Broderick,* and, of counsel, *Dilworth, Paxson, Kalish, Levy & Kauffman,* for appellants.

*Charles Potash,* with him *Harris F. Goldrich, Samuel H. High, Jr., Roger B. Reynolds,* and, of counsel, *Wisler, Pearlstine, Talone, Craig & Garrity,* for appellees.

OPINION BY JUDGE WILKINSON, JR., May 18, 1978:

This case is on appeal to us following a decision of the Court of Common Pleas of Montgomery County denying appellants' request for a preliminary injunction. We affirm.

Appellants, whom we will refer to as Cedarbrook, operate a large commercial complex in Cheltenham Township, Montgomery County. This complex consists of five separate parcels of land, three of which contain apartment buildings, one a shopping center, and the last a golf course and some vacant, undeveloped land. Cedarbrook owes almost two million dollars in taxes on these properties for the year 1977. These taxes are owed to the Cheltenham Township School District, Montgomery County, Cheltenham Township, and the Montgomery County Institution District, all of whom are appellees in this suit. These appellees have threatened to sequester the rent from Cedarbrook's properties under the provisions of Section 19 of the Local Tax Collection Law, Act of May 25, 1945, P.L. 1050, *as amended,* 72 P.S. §5511.19, hereinafter referred to as the 1945 Act. Cedarbrook has therefore instituted this action, seeking to enjoin appellees from utilizing the sequestration provisions of the 1945 Act.

The first argument raised by Cedarbrook is that the sequestration provisions of Section 19 of the 1945 Act, 72 P.S. §5511.19, have been impliedly repealed by the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§5860.101 et seq., hereinafter referred to as the 1947 Act. For this contention

to succeed, Cedarbrook must demonstrate that the sequestration provisions found in the 1945 Act are irreconcilable with the provisions of the 1947 Act. Once there is a finding that two statutes are irreconcilable, the one later in date of final enactment would prevail. Statutory Construction Act of 1972, 1 Pa. C.S. §1936.

Cedarbrook must carry a heavy burden to demonstrate that the 1945 and 1947 Acts are irreconcilable. Repeals of statutes by implication are not favored, and accordingly there is a presumption against the implied repeal of a statute. *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.,* 461 Pa. 420, 336 A.2d 609 (1975); *Lehigh Valley Cooperative Farmers v. Commonwealth,* 8 Pa. Commonwealth Ct. 18, 305 A.2d 908 (1973). The lower court found that the two statutes were not irreconcilable and we must agree.

The 1947 Act, as its title implies, deals mainly with the entering of liens against real property for delinquent taxes, and the subsequent sale of such realty for the satisfaction of those liens. Under its provisions the tax collector must, by the first Monday in May of each year, return to the tax claim bureau a list of all properties against which taxes were levied during the preceding year, but which remain unpaid. Sequestration of rents by the tax claim bureau cannot begin until the expiration of twenty days from the date the tax claim becomes absolute. Section 401 of the 1947 Act, 72 P.S. §5860.401. A tax claim does not become absolute until the year following the delinquency, with the exact date depending upon when the tax claim notice was sent to the delinquent taxpayer. Section 311 of the 1947 Act, 72 P.S. §5860.311. Thus, in the instant case the tax claim bureau, under the 1947 Act, could not begin sequestration of Cedarbrook's rents

for delinquent 1977 taxes until sometime after January 1, 1979.

The 1945 Act, on the other hand, provides a means whereby the tax collector may sequester rents *at any time* after an owner of real estate neglects or refuses to pay any tax levied against such realty. When this provision is read along with the provisions of the 1947 Act, it becomes clear that the legislature has provided two procedures for sequestration of rent in the collection of delinquent taxes. Until the first Monday of May following the year in which taxes are due, the tax collector may sequester the rents from the realty on which the delinquent taxpayer owes taxes. If at that time taxes remain unpaid, the tax collector must make a return to that effect to the tax claim bureau. The bureau may then institute sequestration of rents under the provisions of the 1947 Act. Our decision in this regard is supported by our Supreme Court's decision in *Tremont Township School District v. Western Anthracite Coal Co.*, 364 Pa. 591, 73 A.2d 670 (1950), which held that the 1947 Act did not deprive the tax collector of his right to sue a delinquent taxpayer in assumpsit.

The second contention put forth by Cedarbrook is that Section 19 of the 1945 Act is unconstitutional on the grounds that it deprives the taxpayer of due process by not providing for notice and a hearing prior to the seizure of the taxpayer's property. We cannot agree. Two other provisions of the 1945 Act, namely Section 20, 72 P.S. §5511.20, and Section 20.1, 72 P.S. §5511.20a, have been held constitutional even though they provide for the attachment of wages for unpaid taxes prior to a hearing. *Hartman v. Columbia Malleable Castings Corp.*, 164 Pa. Superior Ct. 1, 63 A.2d 406 (1949); *Wetzel v. Harrisburg Steel Co.*, 97 Dauphin 208 (1975). Cedarbrook attempts to distinguish

those cases on the grounds that they did not deal with taxes on realty, but we are not persuaded by this argument.

Cedarbrook also relies on the recent United States Supreme Court decision in *Commissioner v. Shapiro,* 424 U.S. 614 (1976), wherein the Court stated that permitting "the Government to seize and hold property on the mere good-faith allegation of an unpaid tax would raise serious constitutional problems in cases, such as this one, where it is asserted that seizure of assets pursuant to a jeopardy assessment is causing irreparable injury." *Shapiro, supra,* at 629.

We do not believe that *Shapiro* requires that we strike down the sequestration provisions of the 1945 Act. *Shapiro* involved a rather unique situation in that the assets the government wished to seize were needed by the taxpayer for bail. If the assets were frozen, Shapiro would have been incarcerated pending his criminal trial. Thus, while a later appeal by Shapiro to the tax court may have freed the assets, it would not have cured the irreparable injury which Shapiro would have suffered as a result of his incarceration.

No such set of circumstances exists in the instant case. Cedarbrook may appeal the tax liability assessed it for the year 1977, and if it is determined that this assessment is in error an appropriate refund would be made to Cedarbrook. Section 518.1 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-518.1; Section 9 of the Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. §5350. Cedarbrook will not suffer irreparable injury of the type contemplated by the Supreme Court in *Shapiro,* and is fully protected from an erroneous assessment by virtue of the appeal provisions of the assessment laws previously cited.

Accordingly, we will enter the following

ORDER

AND Now, May 18, 1978, the decision of the Court of Common Pleas of Montgomery County, at Civil Action No. 77-16993, dated November 7, 1977, is affirmed.

---

DISSENTING OPINION BY JUDGE ROGERS:

Section 19 of the Local Tax Collection Law, Act of May 25, 1945, P.L. 1050 *as amended,* 72 P.S. §5511.19 provides:

> In case any person who is the owner of real estate neglects or refuses to pay any tax levied against such real property, the tax collector of such taxes may any time thereafter notify in writing the tenant in possession of any such real property, that the owner thereof has failed to pay such tax, and request the payment of such tax together with any penalties and interest due thereon by such tenant out of any rent money then due and owing, or thereafter to become due and owing to such delinquent taxpayer. Upon receipt of such notice from the tax collector, the tenant in possession of any such real property shall deduct from any rent that is then, or may thereafter become due and owing to such delinquent owner, the amount of such delinquent tax and the penalties and interest due thereon, and pay the same over to the collector of such taxes. The proper receipt for such taxes and penalties and interest, if any, paid to the tax collector by any tenant shall be a good and sufficient voucher to offset any claim that such delinquent taxpayer may have against such tenant for any rent to the amount thereof.

The Act makes no provision for inquiry of any kind into the basis for the local tax collector's claim.

In *Commissioner v. Shapiro,* 424 U.S. 614 (1976), the Supreme Court held that under an exception to the Anti-Injunction Act U.S.C. §7421(a)), a jeopardy assessment and levy by the Internal Revenue Service could be enjoined if it was clear that the government could not ultimately prevail on its claim and if the taxpayer could allege and prove that he would suffer irreparable injury if the injunction were not granted. One of the questions confronted by the Court in *Commissioner v. Shapiro, supra,* was whether the interest of the government in the prompt receipt of tax revenues was so compelling as to justify the seizure of the taxpayer's property without any kind of inquiry into the basis for the government's claim. The Court found in the mentioned exception to the Anti-Injunction Act a statutory basis for the taxpayer's challenge by suit seeking to restrain the summary seizure of his assets. It was not, therefore, required to decide whether the procedures for jeopardy assessment and levy failed to provide due process. Mr. Justice WHITE for the Court wrote, however, with regard to this issue:

> We have often noted that, in resolving a claimed violation of procedural due process, a careful weighing of the respective interests is required, Goss v. Lopez, 419 U.S. 565, 579, 42 L.Ed. 2d 725, 95 S.Ct. 729 (1975); and we have noted that the Government's interest in collecting the revenues is an important one, Fuentes v. Shevin, 407 U.S. 67, 92, 32 L.Ed. 2d 556, 92 S.Ct. 1983 (1972). This interest is clearly sufficient to justify seizure of a taxpayer's assets without a preseizure hearing. Fuentes v. Shevin, supra, and to remove any need to subject the Commissioner to the burden of an inquiry into

the basis for his assessment absent factual allegations of irreparable injury by the taxpayer. Phillips v. Commissioner, 283 U.S. 589, 595-597, 75 L.Ed. 1289, 51 S.Ct. 608 (1931). However, it is very doubtful that the need to collect the revenues is a sufficient reason to justify seizure causing irreparable injury without a prompt post-seizure inquiry of any kind into the Commissioner's basis for his claim.

The taxpayer has no right to start a proceeding before the Tax Court for 60 days following a jeopardy seizure; the IRS may under the statute wait 60 days before it issues the deficiency notice which gives the taxpayer his 'ticket to the Tax Court.' 26 U.S.C. §6861 [26 U.S.C.S. §6861]. The record does not indicate how quickly a hearing on the merits can be obtained there. Preliminary relief is not there available. Nothing we hold today, of course, would prevent the Government from providing an administrative or other forum outside the Art. III judicial system for whatever preliminary inquiry is to be made as to the basis for a jeopardy assessment and levy.

*Commissioner v. Shapiro,* 424 U.S. at 631, n. 12.
This statement clearly says to me that the statute before us in this case, which enables a local tax collector to seize a property owner's rents without inquiry of any kind into the basis of the municipality's claim, fails to provide procedural due process.

Section 518.1 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-518.1 and Section 9 of the Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. §5350, cited by the majority and affording the property owner the right to appeal the valuation of his property for local tax

purposes do not meet the appellant's objection that its rents have been seized without hearing or opportunity to be heard—even to complain that it doesn't owe the taxes. More germane is the Act of May 21, 1943, P.L. 349, *as amended,* 72 P.S. §§5566(b), 5566(c), affording the taxpayer the right to make written claim for taxes voluntarily or involuntarily paid but not legally due and permitting suit in assumpsit in the event of a refusal of the claim. This procedure is hardly the "prompt post-seizure inquiry" to which the Supreme Court alludes. The statute here in question does not comport with contemporary concepts of procedural due process. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601 (1975). *Compare Mitchell v. W. T. Grant Company,* 416 U.S. 600 (1974).

I therefore respectfully dissent. I would hold that Section 19 of the Local Tax Collection Act is unconstitutional and I would reverse the order below and enjoin the threatened summary seizure of the appellant's rents.

Judge BLATT concurs in this dissent.